05-2158-cv
*Boykin v. KeyCorp*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: May 3, 2007                                    Decided: March 27, 2008)

Docket No. 05-2158-cv

_____

YVETTE BOYKIN,

*Plaintiff-Appellant*,

−v.−

KEYCORP and its Subsidiary,
KEY BANK NATIONAL ASSOCIATION,
doing business as KEYBANK,

*Defendants-Appellees*,

STATE OF NEW YORK DIVISION OF HUMAN RIGHTS and
U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

*Defendants*.

_____

Before:    WINTER, CALABRESI and SOTOMAYOR, *Circuit Judges*.

_____

Appellant Yvette Boykin challenges the judgment of the United States District Court for

the Western District of New York dismissing all of her claims under the Fair Housing Act, 42

U.S.C. § 3601 *et seq.* ("FHA"), as untimely and, in the alternative, dismissing her FHA disparate

treatment claim as insufficiently pleaded.  We hold that the district court erred in dismissing

Boykin's claims as untimely because it considered Boykin's administrative proceeding no longer

-1-

"pending," and the two-year filing period no longer tolled, as of the date of a case-closed letter that Boykin received from the New York State Division of Human Rights, rather than the final letter that she received from the United States Department of Housing and Urban Development regional office notifying her that investigation of her complaint was complete. We also hold that Boykin's disparate treatment claim satisfied the pleading standard of Federal Rule of Civil Procedure 8(a). We therefore VACATE the judgment of the district court and REMAND the case for further proceedings.

Judge Winter concurs in a separate opinion.

> SANFORD I. WEISBURST (Jeffrey A. Conciatori, William B. Adams, *on the brief*), Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, New York, *for plaintiff-appellant*.
>
> CHRISTOPHER J. HARRIGAN (Laurence B. Oppenheimer, *on the brief*), Hiscock & Barclay, LLP, Buffalo, New York, *for defendants-appellees*.

SOTOMAYOR, *Circuit Judge*:

Plaintiff-appellant Yvette Boykin sued defendants-appellees KeyCorp and Key Bank National Association (collectively, "KeyBank") for violations of a number of federal and state statutes, including the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), after KeyBank denied her application for a home equity loan. Boykin appeals the judgment of the United States District Court for the Western District of New York (Skretny, J.) dismissing all of her FHA claims as untimely and, in the alternative, dismissing her FHA disparate treatment claim as insufficiently pleaded. We conclude that Boykin's claims were timely because her administrative proceeding remained pending before the United States Department of Housing and Urban

-2-

Development ("HUD"), and the two-year period for filing a complaint was tolled, until the date of HUD's final letter informing Boykin that it had terminated the proceeding, rather than the earlier date of the New York State Division of Human Rights ("NYDHR") case-closed letter. We conclude that Boykin's disparate treatment claim satisfied the pleading standard of Federal Rule of Civil Procedure 8(a) and should not have been dismissed as insufficiently pleaded. We therefore VACATE the district court's dismissal of Boykin's claims and REMAND her case for further proceedings.

**BACKGROUND**

The following facts are presented in Boykin's complaint or in documents that, although not attached to the complaint, are integral to it. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), *aff'd*, 552 U.S. — , 128 S. Ct. 1147 (2008). In reviewing a motion to dismiss, we accept the allegations in the complaint as true. *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).

Boykin, an African-American woman who resides in Georgia, owns and lets a multifamily house in a minority-concentrated neighborhood in Buffalo, New York. On August 1, 2001, she applied in person for a non-owner-occupied home equity loan on her Buffalo property at a Buffalo branch of KeyBank. The loan officer with whom she met told her that her loan application had been conditionally approved based on her credit report. Later that day, however, the loan officer telephoned Boykin to inform her that her application had been denied because she did not live in New York State. The loan officer stated that he had been unaware of KeyBank's policy against making loans to out-of-state applicants. He did not offer Boykin any alternative means of obtaining financing through KeyBank. On August 16, 2001, Boykin

received a form denial from KeyBank stating that her loan had been denied because she was "out of [the] servicing area."

On August 8, 2001,[1] Boykin filed a complaint with HUD, in which she alleged that KeyBank had discriminated against her on the basis of race, sex, and the location of the property "in a minority concentrated neighborhood."  On September 27, 2001, Boykin received a letter from the HUD regional director for New York (the "referral letter") informing her that her complaint had been referred for investigation to the regional director of NYDHR in Buffalo pursuant to 42 U.S.C. § 3610(f), which allows HUD to delegate investigation of complaints to state and local agencies that have been certified by the Secretary of HUD.[2]  The letter stated that "[u]nless otherwise notified, [NYDHR] will be responsible for all processing action on this complaint," and directed Boykin to refer all correspondence and inquiries to NYDHR.  The letter also stated that Boykin had two years in which to file a civil action after the alleged

---

[1] Boykin signed and dated her complaint August 8, 2001, and the district court deemed this to be the date on which Boykin's administrative proceedings commenced "pending" before HUD.  *Boykin v. KeyCorp*, No. 03-cv-944S, 2005 WL 711891, at *4 (W.D.N.Y. Mar. 28, 2005).  However, the HUD referral letter and a copy of Boykin's administrative complaint indicate September 27, 2001 as the applicable filing date.  Because we hold that Boykin's administrative proceeding was pending until February 26, 2002, Boykin's complaint in the district court is timely regardless of whether her administrative proceeding commenced on August 8 or September 27, 2001.

[2] This provision of the FHA provides that "[w]henever a complaint alleges a discriminatory housing practice" within the jurisdiction of a certified state or local public agency, "the Secretary shall refer such complaint to that certified agency before taking any action with respect to such complaint."  42 U.S.C. § 3610(f)(1).  The Secretary may certify a state or local public agency to receive referrals of FHA complaints only after determining that "(i) the substantive rights protected by such agency in the jurisdiction with respect to which certification is to be made; (ii) the procedures followed by such agency; (iii) the remedies available to such agency; and (iv) the availability of judicial review of such agency's action[] are substantially equivalent to those created by and under this subchapter."  *Id.* § 3610(f)(3)(A).

discriminatory practice occurred, and that "[t]he two year period does not include the time the complaint is pending before this Department."

On December 3, 2001, NYDHR sent Boykin a letter styled "Determination and Order After Investigation" (the "NYDHR case-closed letter"), in which it stated that it had found "NO PROBABLE CAUSE to believe that [KeyBank] has engaged in or is engaging in the unlawful discriminatory practice complained of." The letter explained that "[t]he investigation did not reveal any evidence" to support Boykin's allegations and that her "application for a home equity loan was rejected for legitimate non-discriminatory business reasons." Further, the letter mentioned that documentation showed that KeyBank has "also denied loan applications from Caucasian applicants at a higher rate than for minority applicants." After stating that "[t]he complaint is therefore ordered dismissed and the file is closed," the NYDHR case-closed letter informed Boykin that she had the right to appeal NYDHR's determination in New York State Supreme Court within sixty days. It also warned her that if she pursued judicial review of the agency's disposition of her complaint and received an adverse determination, she could "lose . . . her right to proceed subsequently in federal court." The NYDHR case-closed letter said nothing about the two-year limitations period for filing a civil action in federal district court.

On February 26, 2002, Boykin received a letter from the HUD regional director for New York (the "final letter") stating that it "ha[d] received notification that processing of [Boykin's] complaint is complete and . . . the subject complaint has been closed by [NYDHR]." Therefore, the final letter said, "[t]he complaint filed with the HUD Office of Fair Housing and Equal Opportunity has been closed based on this information." The final letter further informed Boykin that she might be able to appeal the NYDHR determination under state or local law. It also

reiterated that she had two years in which to file a civil action, and that "[t]he computation of this two-year period does not include the time during which this administrative proceeding was pending."

On December 19, 2003, Boykin filed suit *pro se* in the United States District Court for the Western District of New York against KeyBank, HUD and NYDHR asserting claims under the FHA; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and the Equal Credit Opportunity Act, 15 U.S.C. § 1691.

Boykin stated that, as an African-American woman, KeyBank treated her "differently from similarly situated loan applicants not in the protected classes, despite her qualifications for the loan[,] because of her race, sex and the location of the property in a predominantly African American neighborhood." Compl. ¶ 11. She stated that "[u]pon information and belief, persons who were not members of the protected classes received loans and were more favorably treated in the loan application process than [she] with regard to the same or similar types of properties." *Id.* She alleged further that KeyBank's reliance on its policy against loaning to out-of-state applicants was pretextual because (1) upon information and belief, the policy was not the true reason for the denial, and (2) KeyBank did not counsel her regarding other options that non-minority loan applicants received. *Id*. ¶ 12. Finally, Boykin alleged that she was "disparately impacted" by KeyBank's policy because "it was not uniformly applied" and because "[KeyBank] utilizes a formula, criterion, rationale, standard of acceptance or business policy of reviewing loan applications" that disproportionately denied loan applications by minority applicants or residents of minority-concentrated neighborhoods. *Id*. ¶ 13.

On March 28, 2005, the district court granted KeyBank's motion to dismiss Boykin's

claims. *Boykin v. KeyCorp*, No. 03-cv-944S, 2005 WL 711891 (W.D.N.Y. Mar. 28, 2005). The

court concluded that all of Boykin's FHA claims were untimely because the two-year limitation

period for filing a claim was only tolled while an administrative proceeding was pending, and the

court considered Boykin's proceeding closed upon issuance of the NYDHR case-closed letter.

*Id.* at *4. The court explained that "once HUD referred Plaintiff's claim to the NYDHR, it could

take no further action on the complaint, . . . [and therefore] Plaintiff's Complaint was no longer

pending after the NYDHR made its determination." *Id.* In the alternative, the district court held

that Boykin's FHA disparate treatment claim was insufficiently pleaded. *Id.*[3] The district court

also dismissed Boykin's claims against KeyBank under other statutes, *id.* at *5-7, and all of her

claims against HUD and NYDHR, *id.* at *7-11.

Boykin, still proceeding *pro se*, filed a notice of appeal in this Court on April 25, 2005,

appealing only from the district court's dismissal of her FHA claims against KeyBank.[4] In an

order dated November 29, 2005, a prior panel of this Court directed the appointment of counsel

to represent Boykin and brief the issues of the timeliness and appropriate pleading standard for

her FHA claims.

Following oral argument before this panel, we directed HUD to submit a letter brief

describing its past and present practice of issuing final letters formally closing referred

---

[3] The court noted, however, that Boykin's disparate impact claim, if timely, would have
stated a claim upon which relief could be granted. *Boykin*, 2005 WL 711891, at *4 n.6. Whether
Boykin's disparate impact claim was sufficiently pleaded is not before us because KeyBank did
not cross-appeal this aspect of the district court's decision. We express no opinion on the
pleading requirements for an FHA disparate impact claim.

[4] Because Boykin appeals only the dismissal of her FHA claims against KeyBank, we do
not address her claims under other statutes or against other defendants.

complaints. HUD informed us that the issuance of final letters varies by region. Letter from Kim Kendrick, Assistant Sec'y for Fair Hous. and Equal Opportunity, U.S. Dep't of Hous. & Urban Dev. (June 6, 2007), at 1 ("HUD Letter"). HUD has ten regional offices, and each Fair Housing and Equal Opportunity Act Region Director "determines the practice in that region regarding the issuance of a separate HUD letter." *Id.* Four of the ten HUD regional offices, including the office that is responsible for New York, issue a final letter for every case in their region.[5] *Id.* Although the HUD Letter stated that a final letter confirms the certified agency's closure "as a ministerial matter," *id.*, it also explained that the purpose of this final letter is "to advise complainants of their right to file a private civil action pursuant to 42 U.S.C. [§] 3613." *Id.* Finally, the HUD Letter stated that "[a]s a matter of practice, HUD regards the letter emanating from the [state or local] agency as ending the administrative proceeding." *Id.*

## DISCUSSION

### I. Timeliness of Boykin's Complaint

The district court's timeliness determination was a matter of statutory interpretation, which we review *de novo*. *See Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006). The FHA provides that an "aggrieved person" has two years from the occurrence or termination of an alleged discriminatory practice in which to commence a civil action. 42 U.S.C. § 3613(a)(1)(A). However, "[t]he computation of such 2-year period shall not include any time during which an

---

[5] The four regional offices that issue final letters cover the following states: New York and New Jersey (New York City region); Delaware, Maryland, Pennsylvania, Virginia, West Virginia and the District of Columbia (Philadelphia region); Iowa, Kansas, Missouri and Nebraska (Kansas City region); and Arizona, California, Hawaii and Nevada (San Francisco region). *See* Attachment to HUD Letter. We note that the HUD regional offices responsible for the other two states within this Court's jurisdiction, Connecticut and Vermont, do not issue final letters. *Id.*

administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." *Id.* § 3613(a)(1)(B). When, as in this case, a complaint has been filed with HUD and referred to a certified state or local agency for investigation, the statute's reference to "an administrative proceeding" is ambiguous: it is unclear whether the phrase refers to the proceeding before HUD, the proceeding before the certified agency, or both. The ambiguity was exacerbated in this case because Boykin received two letters, one from NYDHR and one from the HUD regional office, each notifying her that her complaint was terminated after investigation.

Had HUD issued a regulation addressing when "an administrative proceeding under this subchapter" is no longer "pending" for the purposes of calculating the two-year filing limitation, we would defer to the interpretation in that regulation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984), so long as it was not "arbitrary, capricious, or manifestly contrary to the statute," *id.*; *see also Meyer v. Holley*, 537 U.S. 280, 287-88 (2003) (indicating that *Chevron* deference is appropriate for FHA regulations promulgated by HUD); *United States v. Mead Corp.*, 533 U.S. 218, 227-31 (2001) (explaining when agency interpretation is entitled to *Chevron* deference). But HUD has not issued a rule or regulation on this question. Our only guidance from HUD comes from the letter it has submitted explaining how it handles the termination of referred complaints "[a]s a matter of practice." HUD considers the administrative proceeding terminated on the date of a certified agency case-closed letter, even for those cases in which a HUD regional office has issued a final letter to the complainant notifying her that investigation of her complaint is complete. It is this narrow category of practice—determining that a proceeding is no longer "pending" before HUD as of the

date of the certified agency case-closed letter, in cases where HUD has sent to the complainant a final letter disposing of the proceeding—that we consider here. We express no opinion about cases in which a complainant, for whatever reason, does not receive a final letter, even when the HUD regional office for that jurisdiction generally issues such letters.

We consider the informal, unpublished "practice" described in the HUD Letter under the framework for a more limited standard of deference described in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that agency interpretations "in opinion letters . . .[,] policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law" are entitled only to *Skidmore* deference). Under *Skidmore*, the weight we accord an agency interpretation depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140; *see also De La Mota v. U.S. Dep't of Educ.*, 412 F.3d 71, 80 (2d Cir. 2005) ("[T]he weight accorded to [agency] interpretations [under *Skidmore*] depends on their 'thoroughness,' 'validity,' 'consistency,' and 'power to persuade.'" (quoting *Skidmore*, 323 U.S. at 140)).

Evaluating the *Skidmore* factors here, we do not find persuasive HUD's interpretation of when a proceeding is no longer "pending" in this situation where a regional office sends a final closure letter. As an initial matter, we note that HUD's own characterization of this interpretation as "a matter of practice" does not suggest that it was thoroughly considered. Nor can we conclude, on the record before us, that HUD's practice is validly reasoned. We have explained that the "validity" inquiry looks to whether an agency interpretation is "well-reasoned, substantiated, and logical." *De La Mota*, 412 F.3d at 80. HUD offers no explanation of the

considerations or reasoning underlying its practice, except perhaps its conclusory statement that final letters are issued "as a ministerial matter."  *See Detsel v. Sullivan*, 895 F.2d 58, 65 (2d Cir. 1990) (declining to accord *Skidmore* deference when, among other reasons, the agency "has failed to produce any evidence indicating the rationale for [its] interpretation").  Further, HUD's practice appears to rest on an implicit assumption, not substantiated by the statute, that the proceeding before HUD is necessarily coterminous with the proceeding before the certified agency.  Yet the text of the statute indicates that, under certain circumstances, there may be proceedings pending before HUD even after a certified agency has terminated its investigation.  The FHA provides that "[e]xcept with the consent of such certified agency, the Secretary . . . shall take no further action with respect to [a referred] complaint" unless one of three conditions is met: (1) the certified agency has not commenced proceedings within thirty days of referral; (2) the certified agency, having commenced proceedings within thirty days, has not conducted them with "reasonable promptness"; or (3) the Secretary determines that the agency no longer qualifies for such certification.  42 U.S.C. § 3610(f)(2).

The district court held that because none of these three conditions existed, HUD could not take further action on Boykin's complaint, and termination of the NYDHR investigation meant that Boykin's proceeding was no longer "pending."  *See Boykin*, 2005 WL 711891, at *4.  However, the district court's conclusion ignored the prefatory clause that introduces these three conditions and makes clear that they apply only when HUD has not obtained consent of the certified agency to take further action.  *See* 42 U.S.C. § 3610(f)(2) (stating that, "[e]xcept with the consent of such certified agency," HUD "shall take no further action" on a referred complaint unless one of the three conditions described above is met).  Indeed, an agency regulation

-11-

explicitly provides that HUD may "reactivate" a referred complaint when the state agency "consents or requests the reactivation." 24 C.F.R. § 103.110.[6] HUD's authority, under certain circumstances, to take further action on a referred complaint suggests that a final letter from the HUD regional office and the certified agency case-closed letter are not necessarily redundant. In other words, because HUD *may* take further action on a referred complaint, with or without agency consent, a complainant such as Boykin who receives a final letter from the HUD regional office *after* a certified agency case-closed letter cannot assume—as HUD's practice would have her do—that the proceeding pending before HUD necessarily terminated when the certified agency closed its investigation and that the final letter is purely ministerial.[7]

---

[6] KeyBank counters that even consensual reactivation was not an option for HUD in this case. It relies for this proposition on a 2004 Memorandum of Understanding between HUD and NYDHR that lays out the terms of the referral process. Memorandum of Understanding, dated March 10, 2004, between the HUD and NYDHR ("MOU"). The MOU specifies four circumstances under which HUD may seek NYDHR's consent to reactivate a complaint: (1) if the respondent is a federal, state or local agency; (2) if the respondent has property outside the state agency's jurisdiction; (3) if the case is "systemic"; or (4) if handling the case would cause the state agency a conflict of interest. MOU at 8-9. KeyBank contends that none of those circumstances existed in this case. As an initial matter, we note that HUD and NYDHR executed the MOU after closing their investigations of Boykin's complaint. But even assuming that it would be proper to consider the MOU, KeyBank's position is unpersuasive. HUD could have determined, after referring Boykin's complaint to NYDHR, that KeyBank had property beyond NYDHR's reach, that the complaint presented a "systemic" issue, or that NYDHR would face a conflict of interest in investigating Boykin's claims. Only with the benefit of hindsight is it clear that HUD did not decide to seek consensual reactivation on any of these grounds. In addition, the MOU does not suggest that the four circumstances under which HUD may seek consensual reactivation are exhaustive; it simply states that "[t]he following situations are bases for reactivation under this paragraph." *Id.* at 8. In sum, the terms of the MOU, along with the three statutory conditions under which HUD may take further action on a referred complaint *without* agency consent, suggest that HUD retained the option to reactivate its own investigation even after NYDHR's case-closed letter.

[7] Judge Winter's confidence that "HUD's 'closing' of a case that has been referred to a local certified agency is [a] legal non-event" is perplexing in light of the fact that, under certain circumstances, HUD *may* take further action with respect to a referred complaint even after the

-12-

As for consistency, HUD's practice conflicts with the suggestion, manifest in the correspondence between HUD's regional office and Boykin, that there is a distinction between the proceeding before HUD and that before the certified agency.[8] For example, HUD's referral letter to Boykin notified her that her complaint had been referred to NYDHR and stated that the two-year time limit for filing a civil action in district court "does not include the time the complaint is pending before *this Department*" (emphasis added). However, after notifying Boykin that her complaint had been referred to NYDHR, the letter described NYDHR as "the agency," and not the "Department." The referral letter thus suggested that the time period was tolled while proceedings were pending before HUD, as distinguished from while they were simply pending before NYDHR. The final letter stated that HUD "has received notification that processing of the subject complaint is complete and that the subject complaint has been closed by the [state] agency. The complaint filed with the HUD Office of Fair Housing and Equal Opportunity has been closed based on this information." With regard to the filing limitation for Boykin's claims, it also stated that "[t]he computation of this two-year period does not include the time during which *this administrative proceeding* was pending" (emphasis added). Although the final letter did not define "this administrative proceeding," the fact that the phrase appeared in a letter from the HUD regional office directly suggested that it referred to the proceeding before HUD. Moreover, the NYDHR case-closed letter did not address the two-year filing

---

certified agency has terminated its investigation.

[8] The record before us includes only correspondence from the HUD regional office for New York. We express no opinion about HUD's practice or the content of its correspondence with complainants in other jurisdictions, including those regional offices that do not issue final letters.

limitation, only the HUD letters did, thus reinforcing the inference that "this administrative proceeding" referred specifically to the HUD proceeding. The referral letter and the final letter, read together, suggest that whether a proceeding was pending before HUD was not necessarily the same as whether one was pending before NYDHR. HUD's practice of considering the proceeding terminated when the certified agency closed its investigation, even though the complainant received a final letter from the HUD regional office, runs directly contrary to this suggestion.

Finally, because this practice potentially misleads complainants about the date on which their two-year filing limitation is no longer tolled, it may present additional problems in light of HUD's notice obligations.[9] HUD's own regulations require it to provide adequate notice to complainants of their right to file a private civil action under 42 U.S.C. § 3613 and the time limitations on such filing. *See* 24 C.F.R. § 103.100 (requiring notice to complainant of referral of the complaint, of his or her right to commence a civil action under § 3613 within two years, and "that the computation of this two-year period excludes any time during which a proceeding is pending under this part"). The legislative history of the FHA emphasizes the importance of HUD's notice obligation. *See* H.R. Rep. No. 100-711, at 33 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2194 ("These notice requirements underscore the roles to be played by HUD

---

[9] Further, it appears that a complainant has no way of knowing in advance whether he or she will receive a final letter from the HUD regional office. As stated above, our opinion addresses only those cases in which a complainant *does* receive a final letter from the HUD regional office for New York. Nonetheless, HUD may wish to address more comprehensively the ambiguity regarding when a claim that has been referred to a certified agency is no longer "pending" for the purposes of the two-year limitations period, either by issuing a regulation or by clarifying and standardizing the correspondence that all of its regional offices send to complainants.

in the administrative process. Both the aggrieved person and the respondent may rely on HUD

for information and advice, although either or both may engage their own counsel to assist and

represent them."); *cf. Peterson v. Ins. Co. of N. Am.*, 40 F.3d 26, 31 (2d Cir. 1994) (holding that

even if the Equal Employment Opportunity Commission is not required to notify claimant about

applicable limitations period, "once [it] undertakes to provide such information, it must do so

with greater clarity than is shown on this record").

For all of these reasons, we find unreasonable HUD's practice of determining that the

administrative proceeding was no longer pending as of the date of the certified agency case-

closed letter when, as in this case, a HUD regional office has sent a subsequent, final letter. We

hold that when a complainant receives a final letter from a HUD regional office, stating that

HUD has closed its investigation based on notification that the certified agency to which the

complaint was referred has closed its investigation, we will consider the administrative

proceeding to have been "pending," and the filing limitation tolled, until the date of the final

letter.[10]

---

[10] We do not agree with Judge Winter that this case could be decided more easily on equitable tolling grounds. First, although Judge Winter assumes that the FHA is subject to equitable tolling, this Court has never so held. To decide the question would require more analysis than simply establishing, as Judge Winter's opinion does, that Congress knew of the doctrine. *See Acierno v. Barnhart*, 475 F.3d 77, 81 (2d Cir. 2007) ("In order to read an implied equitable tolling provision into a statute that contains no such express provision, we must determine whether equitable tolling is consistent with Congress' intent in enacting the statutory scheme." (internal quotation marks and alterations omitted)). Second, the Supreme Court and the Second Circuit have cautioned that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 127 S. Ct. 1091, 1100 (2007); *see also Zerilli-Edelglass v. N. Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ("[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." (internal quotation marks, citations, and alterations omitted)). Judge Winter's rationale for equitably tolling the limitations period—that the HUD final letter could reasonably be read to suggest that

In the present case, Boykin's administrative proceeding was "pending" from August 8, 2001, the date of her administrative complaint, until February 26, 2002, the date of the final letter. The two-year filing limitation was tolled during this time. Boykin's FHA claims, filed with the district court on December 19, 2003, were therefore within the applicable limitation period and should not have been dismissed as untimely.

## II.  Sufficiency of the Pleadings

The district court held in the alternative that even if Boykin's claims were timely, her disparate treatment claim should be dismissed as insufficiently pleaded. *Boykin*, 2005 WL 711891, at *4. It found, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), that a plaintiff claiming disparate treatment under the FHA need "only allege facts sufficient to state a claim," not facts sufficient to establish a prima facie case. *Boykin*, 2005 WL 711891, at *3. The district court concluded, however, that Boykin's complaint was deficient even under this standard. *Id.* at *4. Although the district court stated that it was dismissing Boykin's complaint for failure to state a claim, ostensibly under Federal Rule of Civil Procedure 12(b)(6), it appears to have dismissed based on the alleged insufficiency of Boykin's pleadings under Rule 8(a). *Id.* We review a district court's dismissal for failure to comply with Rule 8(a) for abuse of discretion. *See Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (applying abuse of discretion standard when claim was dismissed under Rule 12(b)(6) because the reason for dismissal was failure to

the limitations clock begins to tick as of the date of that letter—would hold true at least for every individual who received a final letter from HUD's regional New York office. But to permit equitable tolling for this entire class of individuals would threaten to extend the doctrine beyond its limitation to "rare and exceptional circumstances." Moreover, the very existence of such a class suggests a broader ambiguity in the statutory and regulatory framework regarding the administration of referred FHA complaints. For these reasons, we think it is better to address this ambiguity directly rather than through the equitable tolling doctrine.

satisfy Rule 8's pleading standard); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (reviewing dismissal for failure to comply with Rule 8(a) for abuse of discretion).

a.      The Pleading Standard under Rule 8(a)

As an initial matter, we agree with the district court that *Swierkiewicz* does not require Boykin to plead facts sufficient to establish a prima facie disparate treatment claim. *Swierkiewicz* held that a plaintiff asserting disparate treatment claims under Title VII and the Age Discrimination in Employment Act ("ADEA") need not allege "specific facts establishing a prima facie case of discrimination" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 508. The Court explained that the *McDonnell Douglas* burden-shifting framework "is an evidentiary standard, not a pleading requirement," *id.* at 510, and that to require more than Rule 8(a)'s "simplified notice pleading standard" would unjustifiedly impose a heightened pleading requirement on the plaintiff, *id.* at 512-13. Applying this standard, the Court held that Swierkiewicz had "easily satisfie[d] the requirements of Rule 8(a) because [his complaint] gives respondent fair notice of the basis for [his] claims." *Id.* at 514. The Court noted that Swierkiewicz had:

> alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.

*Id.* (citations omitted).

Like the Title VII and ADEA employment discrimination claims in *Swierkiewicz*, FHA disparate treatment claims like Boykin's are analyzed using the *McDonnell Douglas* burden-

-17-

shifting framework. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). We have stated that "[t]he *Swierkiewicz* holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers." *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam); *see also Lindsay v. Yates*, 498 F.3d 434, 439-40 (6th Cir. 2007) (applying *Swierkiewicz* to an FHA complaint); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004) (same). Boykin's complaint need only satisfy Rule 8(a)'s standard of a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

However, the appropriate standard for assessing the sufficiency of pleadings under Rule 8(a) is the source of some uncertainty in light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). *See Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007). *Twombly* upheld the dismissal of a claim under section 1 of the Sherman Act, 15 U.S.C. § 1, because the complaint did not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Although much of the Court's language addressed the pleading standard for a section 1 claim and the burdens of antitrust litigation specifically, *see id.* at 1966-67, the Court's reasoning suggested "that it intended to make some alteration in the regime of pure notice pleading," *Iqbal*, 490 F.3d at 155. For example, the Court stated that Rule 8(a) requires factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. It explicitly rejected the longstanding maxim that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 1968-69 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Yet the Court also affirmed the vitality of *Swierkiewicz*, which applied a notice pleading standard, and explained that its

-18-

decision did not "require heightened fact pleading of specifics." *Id.* at 1973-74.

After considering these and several other mixed signals in *Twombly*, this Court concluded in *Iqbal* that the Supreme Court "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 490 F.3d at 157-58. We agree with the *Iqbal* panel's conclusion that *Twombly* focused on the plausibility of the complainant's claim for relief, although *Iqbal* does not offer much guidance to plaintiffs regarding when factual "amplification [is] needed to render [a] claim *plausible*." *Id.* at 158.

We need not locate the outer bounds of *Twombly*'s new standard for assessing pleadings under Rule 8(a) here, because no amplification was necessary in this case. After *Twombly*, the Supreme Court issued another decision addressing the sufficiency of a pleading under Rule 8(a), but this time specifically for a complaint filed *pro se*. *See Erickson v. Pardus*, 127 S. Ct. 2197 (2007) (per curiam). The Court reversed the Tenth Circuit's dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8(a). *Id.* at 2200. The Court reiterated that "[s]pecific facts are not necessary," and that the complainant "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 127 S. Ct. at 1964 (internal quotation marks omitted) (alteration in original)). But *Erickson* also emphasized that the court of appeals' departure from Rule 8(a)'s liberal pleading standard was particularly unwarranted because the complainant was *pro se*: "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citations omitted). We review the sufficiency of Boykin's pleadings mindful of this duty to construe more liberally her *pro se* complaint.

b.        Assessing Boykin's Complaint

Boykin alleges disparate treatment under the provision of the FHA that makes it unlawful "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). The district court held that Boykin's complaint was insufficiently pleaded, stating:

> While Plaintiff generally alleges that KeyBank discriminated against her based on her race and sex, the Complaint contains no specific facts supporting her claims. The only specific acts alleged in the Complaint are that KeyBank denied Plaintiff's loan and failed to offer her other loan products. There are no factual allegations whatsoever that connect KeyBank's denial of Plaintiff's loan to a discriminatory motive or racial animus. In fact, each of Plaintiff's claims of racial discrimination is premised "upon information and belief."

*Boykin*, 2005 WL 711891, at *4 (internal citations omitted). The court summed up its analysis by stating that "[i]t is not enough for Plaintiff to simply state that she is a black woman who was denied a loan." *Id.* The district court's analysis of the sufficiency of Boykin's complaint errs for at least three reasons.

First, Boykin's complaint was sufficient to give KeyBank fair notice of her claim and the grounds upon which it rests. *See Twombly*, 127 S. Ct. at 1964; *Swierkiewicz*, 534 U.S. at 512. Boykin alleged that (1) she was an African-American woman, Compl. ¶ 2, who, on August 1, 2001, sought a loan from KeyBank for property in a predominantly African-American

-20-

neighborhood, *id.* ¶¶ 6, 11; (2) she satisfied all of KeyBank's credit requirements and KeyBank conditionally approved the loan that day, *id.* ¶ 6, 9; (3) later the same day, KeyBank denied the loan, ostensibly on the basis of a policy against loaning to out-of-state applicants of which the loan officer said he had previously been unaware, *id.* ¶¶ 7, 8; (4) the true reason for the denial was her race, her sex and the racial makeup of the neighborhood in which the property was located, *id.* ¶¶ 11; (5) similarly situated loan applicants who were not in the protected classes received loans and were treated more favorably throughout the loan application process, *id.*; and (6) KeyBank relied on its policy as a pretext for discrimination, as evidenced in part by the fact that KeyBank did not offer Boykin the counseling and guidance it offers to other, non-minority loan applicants after denying their loans, *id.* ¶ 12. In short, Boykin identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race, her gender and location of her property, just as the complaint in *Swierkiewicz* provided the date and circumstances of the plaintiff's termination and alleged that employees of other nationalities were treated differently than the plaintiff.[11]

Second, the district court improperly faulted Boykin for pleading facts alleged "upon information and belief." KeyBank defends the district court's reasoning by stating that the complaint "contains *not one* specific assertion or instance of preferential treatment by KeyBank employees toward non-minority or male customers." Yet both *Twombly* and *Erickson* explicitly

---

[11] Similarly, the *pro se* complaint in *Erickson* simply stated that the prison doctor's decision to withhold the petitioner's hepatitis C medication "was 'endangering [his] life,'" that the medication "was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment." *Erickson*, 127 S. Ct. at 2200 (alteration in original).

disavow that Rule 8(a) requires any plaintiff—let alone a *pro se* plaintiff—to plead "specific facts." *Twombly*, 127 S. Ct. at 1973-74; *Erickson*, 127 S. Ct. at 2200. Moreover, as Boykin correctly observes, the names and records, if any, of persons who were not members of the protected classes and were more favorably treated in the loan application process is information particularly within KeyBank's knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff . . . ."). Indeed, even in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading "special matters," we have held that "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993) (internal quotation marks omitted).

Third, Boykin is correct that she did not need to allege discriminatory animus for her disparate treatment claim to be sufficiently pleaded. There is no heightened pleading requirement for civil rights complaints alleging racial animus, *see Phillip v. Univ. of Rochester*, 316 F.3d 291, 298-99 (2d Cir. 2003), and this Court has found such claims sufficiently pleaded when the complaint stated simply that plaintiffs "are African-Americans, describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for maltreatment 'solely because of their color.'" *Id.* at 298. We have upheld the vitality of this principle since *Twombly*. *See Iqbal*, 490 F.3d at 174-75. Here, it is sufficient that Boykin's complaint states that she "is an African American female," describes KeyBank's actions with respect to her loan application and

alleges that she "was treated differently from similarly situated loan applicants . . . because of her race, sex, and the location of the property in a predominantly African-American neighborhood."

In sum, Boykin's allegations, taken as true, indicate the possibility of discrimination and thus present a plausible claim of disparate treatment. The complaint gives KeyBank notice of Boykin's claim and the grounds upon which it rests that is sufficient to satisfy Rule 8(a). We emphasize that we are expressing no opinion regarding the merits of Boykin's claim. And that is precisely the point: even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases. The merits of a claim like Boykin's, which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment.[12]

## CONCLUSION

For the foregoing reasons, the judgment of the district court that Boykin's FHA claims were untimely and that Boykin's disparate treatment claim was insufficiently pleaded is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[12] We note, however, that the Federal Rules of Civil Procedure provide several additional checks on the pleading of facts. *See* Fed. R. Civ. P. 11(b)(3) (requiring "allegations and other factual contentions [to] have evidentiary support or . . . [be] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"); *id.* 12(e) (allowing a party to "move for a more definite statement" when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading").

-23-

Boykin v. KeyCorp, No. 05-2158-cv

WINTER, Circuit Judge, concurring,

Respectfully, I concur in the result.

In my view, the holding that the two-year limitations period in this matter resumed on the date of HUD's "final letter" is unsupportable as law or policy and quite unnecessary.

"Final letters" are legal non-events. They have no role in the language of the underlying statute or regulations. At the administrative level, sending "final letters" is not a uniform practice of local HUD offices. Some HUD offices, including those in Connecticut and Vermont, two states with local certified agencies that are governed by the decisions of this court, do not send any such letters. Some HUD offices, other than that of New York, do send letters of some kind, but we have no idea what their content is. The practice of the New York HUD office (and any other HUD offices) of sending such letters can change at any time, as can the content of any letters it (or others) sends.

My colleagues give the "final letter" stature as reflecting HUD's "closing" of a case. However, unlike the local certified agency's closing of a HUD complaint, a formal act with legal significance, see N.Y. COMP. CODES R. & REGS. tit. 9, § 465.5 (2008); Memorandum of Understanding Between The Department of Housing and Urban Development and the New York State Division of Human Rights §§ IV.G.2, VII.F.6, HUD's "closing" of a case that

-24-

has been referred to a local certified agency is another legal non-event. We know that there are no communications to complainants reflecting a HUD "closing" in many states, such as Connecticut and Vermont, and whether any particular date of "closing" can be determined in such states is unknown. "Final letters" and "closings" by HUD are thus acts that may or may not have concrete manifestations and are often indeterminable.

Because a "final letter" and a local HUD "closing" are not regularized events, they may bear no relationship to decisions at a higher level of HUD to pursue or not to pursue a case.[1] Rather, the "closing" is a local bureaucratic act that, on this record, may be no more than moving records to some sort of archive at times that may have more to do with available storage space than with any residual power of HUD to act on a case. I doubt that any court would hold that such a "closing" bars the exercise of HUD's residual powers. See Note 1, supra.

As a result, designating the sending or receipt of the New York "final letter"/"closing" as resuming the limitations period is inappropriate at both a legal and a pragmatic level. First, the two-year limitations period is the creation of Congress, and the triggering (or re-triggering) events must be determined by an examination of congressional intent. If anything can be said with assurance about the role of New York HUD's "final letters"/"closings," it is that these acts cannot possibly have

been intended by Congress as the triggering events. "Final letters"/"closings" have no role, much less a regular one, under the statute or relevant regulations; they are simply bureaucratic acts that may or may not occur.

Second, designating the "final letter"/"closing" as a trigger is improvident at a pragmatic level. Limitations periods may work well when a determinable act, such as an act creating liability, triggers the limitations period. E.g., Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627-28 (2d Cir. 1998) (discussing a Nebraska statute of repose forbidding product liability suits brought more than ten years after the product that allegedly caused injury was delivered to the end consumer). They also work well where an indeterminable act, such as learning of the act creating liability, triggers the limitations period but a maximum outside period is imposed. E.g., 28 U.S.C. § 1658 (allowing securities fraud claims to be brought either within two years of the discovery of the facts constituting the violation or no later than five years after the violation); Rosato v. Mascardo, 844 A.2d 893, 897 (Conn. App. Ct. 2004) (noting that Connecticut requires medical malpractice plaintiffs to bring an action either within two years of discovering their injury or within three years of the act giving rise to liability -- whichever is earlier). Under such rules, courts and parties have some tolerable notice of when actions must be brought.

With this decision, great uncertainty will now prevail in Connecticut and Vermont, where no HUD "final letters" indicating "closings" are sent.  My colleagues offer no rationale to guide plaintiffs in those states in determining the final date by which they must bring suit.  In fact, their opinion might support a holding that the limitations period never resumes in those states.

Similar problems may arise even in New York if a "final letter" is sent but not received.  Moreover, the New York HUD office may decide to stop sending "final letters," leaving New York plaintiffs reading the present opinion to believe that they can await a "final letter."  If so, we may have to choose between holding that the limitations periods for such plaintiffs never resumed, i.e., were endless, or that such plaintiffs are out of luck because of unknown bureaucratic decisions.

These uncertainties and complexities are entirely avoidable because we can easily hold Ms. Boykin's complaint to be timely on the grounds of equitable tolling.  As a general principle, equitable tolling allows a late filing when a plaintiff "has been pursuing his rights diligently and . . . some extraordinary circumstance stood in his way."  Torres v. Barnhart, 417 F.3d 276, 278 (2d Cir. 2005) (internal quotation marks omitted).  Ms. Boykin's situation is as compelling as other cases in which we have applied equitable tolling.  See Zerilli-Edelglass v. New

<u>York City Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003) (providing examples such as a plaintiff filing a timely but defective pleading, a defendant misleading the plaintiff regarding the existence of his cause of action, and a plaintiff unable to file on time due to a medical condition or mental impairment).

The principles underlying the doctrine are therefore more than sufficient to support Ms. Boykin's argument that the limitations period should be equitably tolled. As she stated in her <u>pro se</u> memorandum of law in the district court, Ms. Boykin believed that the "final letter" issued by HUD indicated that the limitations period resumed with that letter and relied on that statement. That belief and reliance was entirely justifiable.

The "final letter" can certainly be viewed as indicating that the two-year period resumed with that letter. There is an ambiguity as to the referent of the words "agency's decision" -- the state agency or HUD -- and the term "administrative proceeding" certainly can be read in the context in which it was used as referring to the proceeding before HUD. The letter therefore created a situation easily as compelling as a disabling medical condition and warranting the application of equitable tolling.

Moreover, a decision grounded in equitable tolling would have several advantages. First, equitable tolling was a

longstanding, well-known doctrine when Congress passed the relevant legislation. Congress can be presumed to have known of it. Disposing of the present matter on equitable tolling grounds does not, therefore, conflict with Congress' intent. Second, it would avoid all the uncertainties and complexities created by using the "final letter"/"closing" as the triggering date. Other circuits have held that a misleading agency letter can lead to equitable tolling even when the agency is not a party. See e.g., Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir. 1995) ("[E]quitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant . . . . [W]hen an administrative agency misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified."). This approach seems particularly appropriate in view of HUD's regulations requiring it to inform complainants of their rights. See 24 C.F.R. § 103.100 (requiring HUD to inform individuals whose complaints have been referred to a certified state agency of their rights under the statute of limitations).[2]

For the reasons stated above, I believe that equitable tolling would be a better rationale for our decision. I therefore concur in the result.

FOOTNOTES

1. HUD's residual power to act after a local certified agency's final action is not subject to any effective time limit. The statute provides that when HUD takes further action on a complaint it has previously referred to a certified state agency, it "shall" complete its investigation within 100 days of commencing further action. 42 U.S.C. § 3610(a)(1)(B)(iv). However, HUD may extend its investigation if it is "impracticable" to complete it within the 100 day period. Id. The term "impracticable" has been interpreted so liberally that there is no effective time limitation on the exercise of HUD's residual powers. See Baumgardner v. Sec'y, United States Dep't of Hous. & Urban Dev., 960 F.2d 572, 578 (6th Cir. 1992).

2. There is dicta in our circuit suggesting that it is "questionable" whether equitable tolling applies where the agency involved is not the defendant. Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886, 891 (2d Cir. 1995). However, the grounds for the decision in Vernon were that the agency letter was clear and the plaintiff had not shown reliance on it. Id.

In Long v. Frank, 22 F.3d 54, 59 (2d Cir. 1994), we stated that a confusing EEOC letter did not amount to "affirmative misconduct" in denying equitable tolling for a claim against the EEOC. However, the decision did not impose a general requirement

-30-

of affirmative misconduct by a defendant.  Rather, Long held that "Long [did] not demonstrate[] . . . reli[ance]."  Id.  Also, a requirement of affirmative misconduct by a defendant or an agency would not square with our more general jurisprudence on equitable tolling, which, as noted above, allows the application of tolling against blameless defendants.  Cf. Zerilli-Edelglass, 333 F.3d at 80.