Isidoro RIVERA, et al., Plaintiffs,

v.

The INCORPORATED VILLAGE OF FARMINGDALE, et al., Defendants.

No. 06–CV–2613 (DRH)(ARL).

United States District Court, E.D. New York.

July 8, 2008.

Community Legal Assistance Corporation, by Stefan Hillel Krieger, Hempstead, NY, for the Plaintiffs.

Walsh Marjus McDougal & DeBellis, LLP, by Stephen Paul Markus, Esq., Claudio DeBellis, Esq., Garden City, NY, for the Defendant the Incorporated Village of Farmingdale.

## MEMORANDUM AND ORDER

HURLEY, Senior District Judge.

## INTRODUCTION

Plaintiffs bring this action alleging that defendants engaged in discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. (the "FHA"). Defendant the Incorporated Village of Farmingdale (the "Village") moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). On December 7, 2007, the Court referred the Village's motion to Magistrate Judge Arlene R. Lindsay for a Report and Recommendation. On June 16, 2008, Judge Lindsay issued a Report and Recommendation (the "Report") that the Village's motion be denied. The Village has filed timely objections. For the reasons stated below, the Court adopts the Report in its entirety. Accordingly, the Village's motion is denied.

## DISCUSSION

### I. Standard of Review

FRCP 72(b) provides that when a magistrate judge issues a report and rec-

ommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R.Civ.P. 72(b). Accordingly, the Court applies de novo review to the Village's objections. *See id.*

## II. *The Report is Adopted*

In the Report, Judge Lindsay found that plaintiffs adequately pled that they had suffered a distinct injury (the lack of affordable housing) as a result of the Village's actions and, therefore, had standing to bring suit. She further found that plaintiffs had stated a valid cause of action under the FHA under both a disparate treatment theory as well as a disparate impact theory.

■ The Village objects to the Report, essentially raising the same arguments it made in its motion papers. Upon a de novo review of the record, the Court adopts the Report in its entirety, for substantially the reasons stated in Judge Lindsay's thorough Report. In doing so, the Court finds that: (1) plaintiffs have standing as they have alleged that the

Village, with discriminatory animus, initiated and assisted with the Secatogue Avenue Redevelopment Plan which resulted in, inter alia, the termination of plaintiffs' leases; (2) plaintiffs have stated a plausible claim under the FHA for disparate treatment as the allegations are sufficient to give the Village fair notice of plaintiffs' claims and the grounds upon which they rest;[1] and (3) plaintiffs have stated a plausible claim under the FHA based upon a disparate impact theory in that they have alleged that the actions of the Village eliminated affordable housing and disproportionately impacted Latinos.[2]

## CONCLUSION

The Court adopts Magistrate Judge Lindsay's June 16, 2008 Report and Recommendation in its entirety. Accordingly, the Village's motion to dismiss the Amended Complaint (docket no. 68) is denied.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION*

LINDSAY, United States Magistrate Judge.

Before the undersigned, on referral from District Judge Hurley, is the Incor-

---

1. In *Boykin v. KeyCorp.*, 521 F.3d 202 (2d Cir.2008), the Second Circuit found that in order to state a claim for disparate treatment under the FHA, a plaintiff "need only satisfy Rule 8(a)'s standard of a 'short and plain statement of the claim showing that she is entitled to relief.' " *Id.* at 213 (quoting Fed. R.Civ.P. 8(a)). A plaintiff does not need to "plead facts sufficient to establish a prima facie disparate treatment claim" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as "the *McDonnell Douglas* burden-shifting framework 'is an evidentiary standard, not a pleading requirement.' " *Id.* at 212 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). In addition, contrary to the Village's contentions, it is also not necessary to allege dis-

criminatory animus at the pleading stage. *Id.* at 215.

2. The Village's argument that the "substance of Plaintiffs' complaint is an alleged animus toward day laborers not Latino residents" (Objections ¶ 4), and that day laborers are not entitled to protection under the FHA, unfairly mischaracterizes the nature of plaintiffs' allegations. As noted by Judge Lindsay, the terms "Latinos" and "Latino day laborers" are used interchangeably throughout the Amended Complaint. Moreover, drawing all inferences in plaintiffs' favor, it can certainly be implied that the gravamen of plaintiffs' claims is that the Village's actions were directed at Latinos.

porated Village of Farmingdale's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The defendant contends that (1) the plaintiffs do not have standing and (2) the amended complaint fails to state a claim upon which relief may be granted. For the reasons set forth below, the undersigned recommends that the motion to dismiss be denied.

## I. FACTUAL BACKGROUND

The plaintiffs, Isidoro Rivera, Lorena Umana, Jose Alvarado, Juan Bustillo, Noberto Alvarez, Elsa Mejia Villalobo, Brian Fredericks, Oscar Ramirez and Eli Chavez, commenced this action against the defendants, the Incorporated Village of Farmingdale (the "Village"), Secatogue Realty, LLC ("Secatogue"), and Fairfield Farmingdale, LLC ("Fairfield"), alleging that the defendants had engaged in discriminatory housing practices in violation of 42 U.S.C. § 3604(a)[1] Complaint at ¶ 1. The plaintiffs, who are all low-income Latinos, are the former residents of 150 Secatogue Avenue, a 54–unit apartment building that was owned by the defendant Secatogue until December 2006. Amended Complaint at ¶ 7. The apartment building is currently owned by Fairfield. *Id.* at ¶ 33. The plaintiffs claim that the Village's adoption of a plan to redevelop the area encompassing 150 Secatogue Avenue was aimed at displacing Latinos from the Village by creating housing that was not affordable to them. *Id.* at ¶ 1.

According to the plaintiffs, since 1999, the Village has become increasingly hostile toward Latinos due to the activities of day laborers within the Village. *Id.* at ¶¶ 21, 22, 26, 27. The plaintiffs claim that the Village has repeatedly tried to curb the activities of day laborers by, among other things, fencing in day laborer hiring sites and enacting traffic ordinances aimed at preventing contractors from picking up day laborers. *Id.* at ¶¶ 27–29. The plaintiffs further claim that when the traffic ordinances and the closing of hiring sites failed to abate day laborer activities, the Village adopted a plan intended to make housing unavailable to Latino day laborers in the Village. *Id.* at ¶ 30.

Specifically, in 2002, the Village began to investigate the possibility of redeveloping the 6.69 acre area in the Village that surrounds the plaintiffs' former residence. *Id.* at ¶ 31. Although only 12.6% of the population of the Village is Latino, the proposed redevelopment area has a Latino population of 56.2%; a population that requires low-cost housing.[2] *Id.* at ¶¶ 14, 18. As such, the redevelopment plan is expected to displace 21% of the Village's Latino's while only displacing 1.2% of the Village's White residents. *Id.* at ¶ 36.

In furtherance of this plan, the Village authorized the preparation of feasibility studies and environmental impact statements. *Id.* at ¶ 31. According to the amended complaint, while the environmental impact statements were being completed, the Village also created a committee to solicit a private developer to "effectuate" the redevelopment plan. *Id.* at ¶ 32. Sometime in July 2005, the committee recruited Fairfield to purchase and renovate 150 Secatogue Avenue. *Id.* at ¶ 33. One year later, Fairfield closed on the purchase and, that day, received a building permit from the Village for the renovations. *Id.*

**1.** The background of this case is framed by the allegations in the complaint, which will be accepted as true for the purposes of this motions. The allegations do not, however, constitute findings of fact by the court. *Culbertson v. Charosa Found. Corp.,* 2004 WL 2370686, *1 n. 1, 2004 U.S. Dist. LEXIS 21064 at *1 n. 1 (E.D.N.Y. Oct. 14, 2004).

**2.** The population figures are based on the 2000 census.

The building permit issued by the Village covered renovation for the interior, the facade, the landscaping and the parking lots surrounding the apartment building. *Id.* The plaintiffs contend that the Village failed to follow its own Code when it issued the permit. *Id.* at ¶¶ 40–63. Specifically, the plaintiffs contend that the permit was issued in violation of the provisions that limit the amount of structural alterations that can be made to a nonconforming building. *Id.* at ¶¶ 41–46. The plaintiffs also contend that Village ignored certain procedural rules concerning amended applications for building permits and failed to thoroughly prosecute summons issued to the defendant Secatogue for housing standards violations. *Id.* at ¶¶ 47–51; 58–63. Finally, the plaintiffs contend that the Village violated a local law barring the creation of additional housing units. *Id.* at ¶¶ 52–57. However, this local law appears to have been enacted after the building permit was issued.

In December 2006, Fairfield terminated the leases of all of its tenants and the plaintiffs were forced to move into new housing in the Village with higher rental rates and less space. *Id.* at ¶¶ 7, 33. Renovations are currently being undertaken by Fairfield and it is believed that Fairfield will be seeking an additional $500 in rent. *Id.* at ¶ 38.

## II. PROCEDURAL BACKGROUND

As previously stated, the plaintiffs filed the original complaint in this case on May 25, 2006. Upon service of the complaint, all three defendants moved to dismiss. [Doc. Nos. 2, 8, 9]. Before the motions to dismiss were decided, the plaintiffs filed a motion seeking to enjoin the sale of the building to Fairfield and the issuance of the building permit. [Doc. No. 28]. However, Fairfield then reached a settlement with the plaintiffs in which it agreed to pay the then nine plaintiffs cash for rent subsidies and/or relocation expenses. [Doc. No. 47].

After the Fairfield stipulation of settlement was so ordered, the plaintiffs filed an amended complaint. By the time the amended complaint was filed, the building permit had been issued by the Village, the construction had begun, and the plaintiffs had all left their apartments. Accordingly, the relief sought in the preliminary injunction motion became moot. [Doc. No. 52]. The change of circumstances was reflected in the amended complaint. *Id.*

The amended complaint also reflects the withdrawal of the plaintiffs Lorena Umana and Oscar Ramirez and the addition of the three new plaintiffs, Ana Maria Mora Gomez, Orlando Pintor Jimenez and Marta Villatoro. Finally, the amended complaint also joins John and Michelle Tosini as defendants. John Tosini is a member of Secatogue Realty and Michelle Tosini is one of its agents. Amended Complaint at ¶ 10–11.

Secatogue and the Tosini's have filed an answer in response to the amended complaint and the Village has re-filed its motion to dismiss; the motion that is now before the undersigned. The Village argues that the claims against it must be dismissed as a matter of law. The court now turns to the Village's arguments.

## III. DISCUSSION

### A. The Village's Standing Argument

■ The court must first address the Village's challenge to the plaintiffs' standing. *See Fair Hous. in Huntington Comm., Inc. v. Town of Huntington,* 316 F.3d 357, 361 (2d Cir.2003)(citing *United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir.1999))(whether claimant has standing is a threshold question in every federal case). "Standing under the

FHA, ... is coextensive with Article III standing ... [T]o bring [a FHA] suit, a plaintiff must meet only 'the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury.' " *Id.* at 362. The Village argues that the plaintiffs lack standing because (1) they cannot demonstrate that their injury, namely, the lack of affordable housing, is related to the Village's conduct and (2) they cannot show that they will benefit in any way if the relief they seek is granted. Accepting as true the allegations in the amended complaint, the Village's standing arguments lacks merit.

■ To begin with, the Village disregarded several of the plaintiffs' allegations when it argued that the plaintiffs cannot demonstrate that their injury is traceable to the Village's conduct. In its supporting papers, the Village states that "Fairfield and Secatogue, two private concerns, negotiated a deal at arms length for the sale of the building" and the only reference in the amended complaint to any action taken by the Village is that it issued a building permit. Def. Mem at 3. Contrary to this characterization, the plaintiffs have alleged that the Village, acting with discriminatory animus, initiated the Secatogue Avenue Redevelopment Plan, authorized the preparation of the feasability studies, prepared environmental impact statements, and even solicited the ultimate developer that terminated the plaintiff's leases. Amended Complaint at ¶¶ 31–32. While the Village may ultimately prove that it "had nothing to do with the actions of [the] private developer to renovate a poorly maintained building," *see* Reply at 2, this standing challenge, which relies on the factual underpinnings of the suit, must be rejected at this stage in the proceedings. *See Fair Housing in Huntington Comm., Inc.,* 316 F.3d at 361.

The Village's standing argument, based on the speculative nature of the relief being sought, also fails. Essentially, the Village contends that the relief sought by the plaintiffs can only be achieved in the legislative branch, not through the courts. In this regard, the Village argues that the plaintiffs would not benefit even if they obtained an order compelling it to approve an affordable housing plan and enjoining it from taking further steps toward redevelopment or from engaging in discriminatory practices or policies. The Village insists that there is no contractor or developer prepared to build the housing the plaintiffs seek, and thus, "[e]ach of the requests is based on nothing more than speculation and possibility." Def. Mem. at 7–8.

In support of this "speculation" argument, the Village directs this court to *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) and *Hope, Inc. v. County of DuPage,* 738 F.2d 797 (7th Cir.1984). In *Warth,* the Supreme Court found that the plaintiffs lacked standing because none of the plaintiffs had a present interest in the property and their desire to live in the area was dependent on the actions of third party developers. Specifically, the *Warth* court held that the prospective plaintiffs were required to demonstrate that absent the alleged unconstitutional acts, there was a substantial probability that they would have found adequate low or moderate income housing. *Warth,* 422 U.S. at 504, 95 S.Ct. 2197. Similarly in *Hope,* the Seventh Circuit found that the plaintiffs lacked standing because they failed to establish that any proposed projects for low income housing were in any way impeded by an act of the County Board or that there were third parties willing to build low income housing. *See Hope, Inc.,* 738 F.2d at 806–07.

The individuals in this case are in an entirely different position than the individ-

uals in *Warth* and *Hope.* In this case, the plaintiffs are not potential residents needing to show that there is a contractor prepared to build low income housing, the plaintiffs were already living in affordable housing that was allegedly eliminated due to the illegal discriminatory actions of the defendants. These plaintiffs have pled an "injury in fact," if nothing else, based on the termination of their leases and the continuation of the redevelopment plan.

Moreover, the Village's standing argument disregards several aspects of the relief being sought by these plaintiffs. Although the Village acknowledges in its reply papers that the plaintiffs are also seeking an order compelling the Village to approve affordable housing, an order compelling the Village to take or fund steps to remedy the effects of the past discrimination, a declaration that the Village's conduct violated the FHA, and compensatory and punitive damages, it contends that the plaintiffs have been made whole by the Fairfield settlement. It is clear that neither of the original plaintiffs, nor the three new plaintiffs, believe they have been made whole; collectively the plaintiffs are still seeking monetary damages. Accordingly, this court finds that the plaintiffs have adequately pled a particularized injury by the Village that, if remedied by the court, will bring them redress, and thus, have standing to pursue this suit.

### B. Motion To Dismiss For Failure to State A Claim

#### 1. Applicable Law

■ In *Bell Atlantic Corp. v. Twombly,* — U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S.Ct. at 1974.

■ The "plausibility" language used by the Supreme Court in *Bell Atlantic* has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, *Bell Atlantic* holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Williams v. Berkshire Fin. Grp. Inc.,* 491 F.Supp.2d 320, 324 (E.D.N.Y.2007)(quoting *Bell Atlantic Corp.,* 127 S.Ct. at 1959).

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. *Watts v. Services for the Underserved,* 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S.Ct. at 1974. And, the plaintiff must "provide the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right

to relief above a speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atlantic,* 127 S.Ct. at 1965).

### 2. The Plaintiff's Fair Housing Act Claims

The Fair Housing Act (the "FHA") was enacted "'to provide ... for fair housing throughout the United States.'" *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 928 (2d Cir.1988)(citing 42 U.S.C. § 3601). The FHA makes it unlawful to refuse to rent, or otherwise make unavailable or deny, a dwelling to a person on the basis of national origin with respect to the sale or rental of a dwelling. *Mitchell v. Shane,* 350 F.3d 39 (2d Cir.2003)(citing 42 U.S.C. § 3604(a)). A claim under the FHA can be brought under one of two alternative theories: disparate treatment or disparate impact. *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 425 (2d Cir.1995). The plaintiffs have asserted claims under both theories.

### a. Disparate Treatment

■ In order to state a claim under the FHA on a theory of disparate treatment, a plaintiffs must allege that "(1) they are members of a class protected by the FHA; (2) they sought, and were qualified, to rent (or continue renting) the dwellings in question; (3) defendants refused to rent to the plaintiffs [or continue to rent to the plaintiffs]; and (4) the housing was put on the market or rented to other tenants." *Khalil v. The Farash Corp.,* 452 F.Supp.2d 203, 207–208 (W.D.N.Y.2006), *aff'd* 277 Fed. Appx. 81 (2d Cir.2008)(citing *Cabrera v. Jakabovitz,* 24 F.3d 372, 381 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994)). Later in the proceedings, the plaintiffs can establish a *prima facie* case by showing that "animus against the protected group 'was a significant factor in the position taken' by the municipal decision-makers themselves ..." *LeBlanc–Sternberg v. Fletcher,* 67 F.3d at 425.

■ The Second Circuit has set forth the following factors to be considered in determining the existence of discriminatory intent in FHA cases: "'(1) the discriminatory impact of the governmental decision; (2) the decision's historical background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from the normal substantive criteria." *Valdez v. Town of Brookhaven,* 2005 WL 3454708, 2005 U.S. Dist. LEXIS 36713 (E.D.N.Y. Dec. 15, 2005)(citing *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 580 (2d Cir. 2003)). Guided by these factor, the court finds that the plaintiffs have sufficiently stated a FHA cause of action under the theory of disparate treatment.

The defendant asserts three distinct arguments in support of its motion to dismiss. First, the defendant contends that because the plaintiffs continue to reside in the Village, the plaintiffs can only claim "wealth discrimination," which is not actionable. Second, the defendant contends that it never promoted any policy or engaged in any acts against the plaintiffs with respect to the sale of the building; a sale that was between two private concerns. In fact, the Village asserts that it took no action whatsoever other than issuing a ministerial building permit. Def. Mem at 3. Finally, the defendant argues the plaintiffs' allegations address actions taken against day laborers, not the Latino population, and thus, the plaintiffs' claim is not actionable. In this regard, the defendant go so far as to say "Plaintiffs do not identify what it is that Farmingdale has done; i.e. what action it has taken, the action which was undertaken with animus

toward a protected group which made housing unavailable to the Plaintiffs." Def. Mem at 9.

The court rejects this narrow reading of the amended complaint. The amended complaint alleges that the Village had enacted a variety of laws targeted at the removal of Latino day laborers from the Village, had specifically targeted the premises where the day laborers resided, had created a plan to redevelop an area disproportionately populated by Latinos, had solicited developers for the site including the ultimate purchaser of the building, and had enforced zoning laws in an unequal manner to foster its goal of eliminating from the Village affordable housing for Latino day laborers. As previously noted, the plaintiffs may not be able to prove that Fairfield's redevelopment of the building had anything to do with the defendant's alleged animus toward the Latino population, but there can be no dispute that the amended complaint has alleged discriminatory animus.

Moreover, the Village's "wealth discrimination" argument misses the mark. The Village contends that the amended complaint "should be dismissed because there is no constitutional right to particular housing at a desired price." Def. Mem at 6–7. In support of this argument, the Village relies on a series of federal and state decisions, some of which stand for the proposition that there is "no constitutional or statutory duty to provide low income housing." *Acevedo v. Nassau County*, 500 F.2d 1078 (2d Cir.1974). The Village is correct that a municipality is not required to provide low income housing to a specific protected group simply because it is providing low income housing to a different protected group. *See e.g., Brecker v. Queens B'Nai B'Rith Housing Dev. Fund Co.*, 798 F.2d 52 (2d Cir.1986). That is not to say, however, that a municipality

can block the development of affordable housing, or in this case eliminate it, simply because it attracts certain minorities. *See Fair Hous. in Huntington Comm. v. Town of Huntington*, 2005 WL 3184273, **2–3, 2005 U.S. Dist LEXIS 31355 **6–7 (E.D.N.Y. Nov. 29, 2005). And, this is precisely the argument propounded by the plaintiffs. The Village's characterization of the plaintiffs' allegations as only seeking to impose a duty to provide low income housing simply disregards the plaintiffs' claim that low income housing was intentionally eliminated to prevent Latinos from living at their former residences.

Finally, notwithstanding the Village's arguments, the term Latinos and Latino day laborers were used interchangeable throughout the complaint. The Village is correct that the plaintiffs have relied on the historical animus exhibited toward day laborers in the Village in support of their claims, but it is far too early in the proceedings to conclude that the Village's conduct was aimed solely at controlling the day laborer population, and not at Latinos. For all these reasons, the court finds that the plaintiffs have sufficiently pled intentional discrimination.

#### b. Disparate Impact

The defendant also argue that the plaintiffs have failed to state a claim based upon a disparate impact theory. In order to state a claim under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly neutral practice has a significantly adverse or disproportionate impact on minorities, or perpetuates segregation. *Fair Hous. in Huntington Comm., Inc.*, 316 F.3d at 357. Unlike a claim on the theory of disparate treatment, the plaintiffs are not required to show discriminatory intent. *Id.* at 366. " 'The basis for a successful disparate impact claim involves a comparison between

two groups—those affected and those unaffected by the facially neutral policy.' This comparison must reveal that, although neutral, the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals." *Valdez*, 2005 WL 3454708, **13–14, 2005 U.S. Dist. LEXIS 36713 *41–42 (citing *Tsombanidis*, 352 F.3d at 574–575). Once the plaintiffs make this showing, the defendant must then demonstrate that "its actions furthered a legitimate, bona fide governmental interest and that no alternative would serve that interest will less discriminatory effect". *Fair Housing in Huntington Comm.*, 2005 WL 3184273, *2, 2005 U.S. Dist LEXIS at *5.

■ Drawing all inferences in favor of the plaintiffs, the amended complaint does state a FHA claim on the theory of disparate impact in that it alleges that the actions of the Village eliminated affordable housing disproportionately impacting Latinos who are in need of low income housing. The plaintiffs allege that while only 12.6% of the population of the Village is Latino, the proposed redevelopment area has a Latino population of 56.2%; all of whom required low-cost housing. *Id.* at ¶¶ 14, 18. Nonetheless, the defendant argues that "[n]othing Farmingdale did or said had any impact upon the price point for these new units" and that the plaintiffs claim is only that "they cannot return to the building because the rent is beyond their reach." [3] Def. Mem. at 15. This

narrow view of the allegations disregards the plaintiff's contentions that the Village initiated the redevelopment plan, and that even if they had the best of intentions, the result of the plan disproportionately injured the Latino population in need of low income housing.[4] Based on these and other allegations in the amended complaint, the court finds that the plaintiffs have also set forth a facts in support of their claim which could entitle them to relief based on a disparate impact theory.

## C. Rule 11

Because the court has concluded that the plaintiffs have adequately stated a claim under the FHA, the court need not address the Rule 11 application. The facts which were alleged in support of the plaintiffs' claims negate any Rule 11 bad faith argument.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the defendant's motion to dismiss the amended complaint be denied.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days from service of this Report. Failure to file objections within this period waives the right to appeal the

---

**3.** The court notes that the Village's reliance on *Dreher v. Rana Management, Inc.*, 493 F.Supp. 930 (E.D.N.Y.1980) is misplaced. The court's determination in *Dreher* was based on undisputed facts and was guided by summary judgment principles. There, the court determined that the landlords decision to terminate leases was reasonable and that the net effect was to deprive the public at large both minorities and non-minorities or certain housing opportunities. While certain parallels to the *Dreher* case may be drawn, the

Village cannot rely on the case in opposition to a motion to dismiss where the facts, especially those concerning the impact of the Village's actions on minorities, is disputed.

**4.** Although the defendant repeatedly refers to the fact that the newly renovated units will have only "a modest rent increase," the court is in no position, at this point, to question the plaintiffs when they contend that a $500 per month increase is cost prohibitive.

District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. June 30, 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992).

June 16, 2008.