UNITED STATES DISTRICT COURT 
WESTERN DISTRICT OF NEW YORK 

RICHARD SCHAFER,1 

 Plaintiff, 
 Case # 19-CV-6907-FPG 
v. 
 DECISION & ORDER 

DIRECT ENERGY SERVICES, LLC, 

 Defendant. 

 INTRODUCTION 
 On August 21, 2020, this Court granted the motion to dismiss for improper venue and for 
failure to state a claim filed by Defendant Direct Energy Services, LLC (“Direct Energy”). See 
Schafer v. Direct Energy Servs., LLC, 481 F. Supp. 3d 141 (W.D.N.Y. 2020) [hereinafter Schafer 
I]. Plaintiff Richard Schafer’s claims were dismissed with prejudice for failure to state a 
cognizable claim. Id. at 152. Schafer filed a notice of appeal. ECF No. 20. In April 2021, the 
Second Circuit vacated the judgment as to one statutory claim and remanded for further 
proceedings. See Schafer v. Direct Energy Servs., LLC, 845 F. App’x 81, 81 n.1, 83 (2d Cir. 2021) 
(summary order) [hereinafter Schafer II]. Now before the Court is Direct Energy’s supplemental 
motion to dismiss. ECF No. 31. Direct Energy asks the Court to dismiss the amended complaint 
for failure to state a claim or, in the alternative, to convert its motion to one for summary judgment 
and grant said motion. ECF No. 31-1 at 6-7. Schafer opposes the motion, ECF No. 33, and Direct 

1 On August 21, 2020, the Court dismissed Plaintiff William Underwood’s claims without prejudice. ECF 
No. 18. Judgment was thereafter entered, ECF No. 19, and his dismissal from the case was not appealed. 
ECF No. 20. Accordingly, Underwood’s claims remain dismissed, and the Clerk of Court is directed to 
terminate Underwood as a plaintiff. 
Energy has filed its reply. ECF No. 34. For the reasons that follow, Direct Energy’s supplemental 
motion is DENIED. 
 BACKGROUND 
 The following facts are from the amended complaint, unless otherwise noted. New York 

deregulated its natural-gas and electricity markets in 1996. This move allowed consumers to 
choose “from a variety of companies selling residential energy,” in addition to traditional utilities. 
ECF No. 4 ¶ 1. These companies are known as “energy services companies.” Direct Energy is 
one such company that began to offer residential energy after deregulation. 
 The gravamen of Schafer’s amended complaint is that Direct Energy misleadingly markets 
the price of its natural-gas plans. Direct Energy advertises its plans as “fixed rate gas supply plans” 
with enticingly low “teaser” prices. Id. ¶ 32. The fixed-rate plans run for set terms, however, and 
after the term ends, the plans “automatically switch to month-to-month variable rate plan[s]” that 
“can rise at the whims of [Direct Energy] and have no upper limit.” Id. ¶ 33. Schafer claims that 
the variable rates are often two or three times as expensive as the teaser rates. 

 The problem, in Schafer’s view, is that Direct Energy does not “clearly and conspicuously 
disclose” to consumers that this switch from fixed- to variable-rate will occur at the end of the set 
term. Id. ¶ 34. Schafer argues that Direct Energy’s contracts do not highlight this point but instead 
bury that condition in a “sea of confusing fine print.” Id. ¶¶ 38, 41. Moreover, after customers are 
switched to the variable-rate plan, Direct Energy only raises their rates slowly, so that customers 
do not initially “realize that they are paying much more than they previously had” under the fixed-
rate plan. ECF No. 4 ¶ 36. Over time, consumers pay more for energy without any redounding 
benefit. Schafer thus asserts that Direct Energy makes its money by “developing and using 
deceptive” marketing and sales practices that “often result in its energy customers paying far more 
than they would have paid had they stayed with their traditional energy suppliers.” Jd. § 2. 
 In Schafer’s case, he alleges that, in connection with his enrollment, Direct Energy sent 
him “enrollment notices, renewal notices, and Terms and Conditions for his [] natural gas supply 
service.” Id. § 44. Schafer claims that the materials he received did not “clearly and conspicuously 
disclose that he would be charged a variable rate.” Jd. 45. The amended complaint includes an 
image illustrating Schafer’s allegation that, with respect to the terms and conditions he received, 
the “reference to variable charges is buried [in] . . . [a] sea of confusing fine print”: 

 * Ditec! Energy Services LLC ~TallFse Phone. 1. cS 
 Direct Energy. endicegrci= hacen chery 
 NEW YORK RESIDENTIAL & SMALL COMMERCIAL statement of your Renewal Tenm te cancel by calling us 
 TERMS AND CONDITIONS a detailed in Section 23. When receiving service on a 
 Natural Gas Supply Service month-to-month basis, you may provide written notice 
 Direct Energy Services, LLC of termination or call us a3 detailed in Section 23 or call 
 LOU to terminate the agreement We may terminate this 
 1. Terms of Service. These Terms and Conditions Agreement by providing thirty (30) days’ written notice 
 jogether with the Customer Disclosure Statement te you, 
 (defined below), which is incorporated herein by 6. Power on Command Plan, If you are purchasing a 
 reference, constitute the agreement (Agreement) Poweron Command Plan, you are agreeing to purchase 
 between you and Direct Energy Services, LLC (Direct from Direct Energy a product that includes electric 
 Energy"). “Customer Disclosure Statement" means, as andlor nalural gas service and an Amazon product. To 
 applicable, either the section of the enrollment consent utilize the full features of an Amazon Echo Dot, you 
 formiletter oof autharizabon enttled = “Customer must have high speed, ‘always on’ Wi-Fiintemet service 
 Oisclaswe Stetement'orthe Schedule A accompanying (dial up and mobile internet access is not compatible), 
 these Terms and Conditions entitled ‘Customer You cannot retum your Amazon Echo Dot to avoid the 
 Disclswe Statement - Schedule A fo Terms and early cancellation fee andlor device cost recovery fee. 
 Canditians’. Please allow 446 weeks for delivery of your Amazon 
 2. Agreement to Purchase Energy. We will supply Echo Dotupon start of your service with Direct Energy. 
 your retail natural gas, a5 delivered to you by your Local 7. Price: the Rate and Daily Fee. During the Initial 
 Distribution Usiity (LOU), subject to the terns and Term, your rate per ccfimef/iherm is set forth: in the 
 conditions of this Agreement. Customer Disclosure Statement. your Initial Term rate 
 3. Agency, You appoint us as your agent to provide is a Fixed or Vanable rate, your price will be for natural 
 retail natural gas service, lincluding the natural gas gas supply service, and includes transpon and storage 
 transportation, transmission and related services and New York City Ubilty Tax (when applicable) and 
 appropriate to provide thal service to you. excludes distribution charges and olher taxes, ubility 
 4, Eligibility, For natural gas sarvios, you must (8) be fees and charges. You ray alga be charged a flat daily 
 eligible to receive service from your LOW and stay customer charge, which you wall find in the amer 
 eligible for such service durng the Term of this Disclosure Statement, 
 Agreement. We can terminate this Agreement by giving 
 you notice if you are not eligible, 
 5. Term of Agreement. The “Initial Term” of your 
 service will begin on the dale the notification regarding 
 the change of your energy provider is deemed effective 
 by your LDU. The Initial Term is set forth in the based on business and m: rket conditions, ' 
 Customer Disclosure Statement. After the Initial Term, 
 you will be notified in advance that tis Agreement will 
 automatically renew on a month-lo-month basis at the 
 same lems, unless Direel Energy sends you wrilten 
 notice of proposed changes to such tens in advance of 
 the renewal date (each such renewal are collectively These items are in addition to your per 
 refered to as the "Renewal Term"), Any such written ecfmetithern rate. lf you are a tax-exempt customer, 
 notice wil be sent at least thirty (20) days and no more you must provide us with an appropriate exemption 
 than sixty (60) days prior to the renewal date, apprising certificate before we wil waive any assessment and 
 you of any proposed changes in the terms and collection of tases. The amount you pay may change for 
 conditions of this Agreement and of your right to renew, reasons allowed by law, including, without limeation (a) 
 terminate of renegotiate this Agreement. H you wish to a change in charges, or new charges, imposed by your 
 raject the renewal of this Agreement withaut incurring LOU, NYPSC or other goverment agency, or (b} we 
 an early termination fee, if any, you will heve three (3) determing that the service plan originally designated is 
 business days from the day you receive the first biling incorrect, 
 NYTCREOG - 087019 
Id. 38 (highlighting in original). Although this image is a screenshot of the terms and conditions 
as of November 2019, see id. § 37 n.7, the Court reads the amended complaint to allege that the

November 2019 terms are materially similar to the terms that Schafer received when he enrolled. 
See ECF No. 4 ¶ 41 (alleging that Direct Energy has continued to include “unclear, inconspicuous 
variable rate language” from the time of Schafer’s enrollment through November 2019). 
 Schafer brought this putative class action in December 2019. He raised claims of (1) a 

violation of New York General Business Law § 349-d(7); and (2) unjust enrichment. See id. at 
14-17. In its August 21, 2020 Decision & Order, the Court dismissed both claims with prejudice. 
See Schafer I, 481 F. Supp. 3d at 152. On appeal, Schafer only challenged the dismissal of the 
statutory claim. Schafer II, 845 F. App’x at 81 n.1. The Second Circuit vacated the judgment as 
to that claim, concluding that the Court had erroneously relied on extrinsic materials in assessing 
Schafer’s claim. See id. at 81-82. Specifically, the Court had relied on contract materials which 
Direct Energy had proffered with its motion and which it claimed were the materials it had sent to 
Schafer. See ECF No. 14-12 at 3; ECF No. 18 at 8 & n.2. The Second Circuit directed the Court 
to either confine its analysis to the pleadings or, pursuant to Rule 12(d), convert Direct Energy’s 
motion to one for summary judgment under Rule 56. See Schafer II, 845 F. App’x at 82 n.9, 83; 

see also Fed. R. Civ. P. 12(d) (“If, on a motion under Rule 12(b)(6) or 12(c), matters outside the 
pleadings are presented to and not excluded by the court, the motion must be treated as one for 
summary judgment under Rule 56.”). 
 DISCUSSION 
 In its supplemental motion, Direct Energy argues that dismissal of the statutory claim is 
appropriate even if the Court confines its analysis to the pleadings. ECF No. 31-1 at 6-7. In the 
alternative, Direct Energy asks the Court to convert the motion to one for summary judgment and 
enter judgment in its favor. Id. In opposition, Schafer responds that he has plausibly alleged a 
violation of Section 349-d(7), and that conversion is inappropriate because he has not had an 
opportunity to take discovery. See ECF No. 33 at 5. The Court takes up each issue in turn. 
I. Rule 12(b)(6) 
 Confining itself to the facts alleged in the amended complaint, and viewing those facts in 

the light most favorable to Schafer, the Court concludes that Schafer has plausibly alleged a 
violation of Section 349-d(7). 
 A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible 
claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A claim for relief is plausible when 
the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the 
defendant is liable for the alleged misconduct. Id. at 678. In considering the plausibility of a 
claim, the Court must accept factual allegations as true and draw all reasonable inferences in the 
plaintiff’s favor. Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011). At the same time, 
the Court is not required to accord “[l]egal conclusions, deductions, or opinions couched as factual 
allegations . . . a presumption of truthfulness.” In re NYSE Specialists Secs. Litig., 503 F.3d 89, 

95 (2d Cir. 2007). 
 N.Y. General Business Law § 349-d provides various protections to customers of energy 
services companies. Subsection (7) provides, “In every contract for energy services and in all 
marketing materials provided to prospective purchasers of such contracts, all variable charges 
shall be clearly and conspicuously identified.” N.Y. Gen. Bus. Law § 349-d(7) (emphasis added). 
In its prior Decision & Order, the Court interpreted this provision to require the following: (a) 
energy services companies must “clearly and conspicuously’ disclose that the charges in question 
are variable; and (b) the disclosure must be sufficiently “unambiguous and understandable to a 
layperson (i.e., clear),” and “prominently displayed (i.e., conspicuous).” Schafer I, 481 F. Supp. 
3d at 146. In Mirkin v. Viridian Energy, Inc., No. 15-CV-1057, 2016 WL 3661106 (D. Conn. July 
5, 2016), the District of Connecticut applied a multi-factor test developed by the Federal Trade 
Commission to determine whether a disclosure under § 349-d(7) was “clear and conspicuous.” 
Mirkin, 2016 WL 3661106, at *5. The FTC’s standard is used in the context of unfair and 

deceptive advertising: an advertisement that may otherwise be deceptive is not if there are clear 
and conspicuous disclosures of the material information about the transaction: 
 The FTC takes several factors into account in assessing whether a given disclosure 
 meets the standard, namely the placement of the disclosure in an advertisement and 
 its proximity to the claim it is qualifying; the prominence of the disclosures; 
 whether items in other parts of the advertisement distract attention from the 
 disclosure, whether the advertisement is so lengthy that the disclosure needs to be 
 repeated; [] and whether the language of the disclosure is understandable to the 
 intended audience. 

Id. (internal ellipsis omitted); see also Corcia v. Asset Acceptance, LLC, No. 13-CV-6404, 2014 
WL 3656049, at *7 (E.D.N.Y. July 22, 2014) (in determining whether disclosure was clear and 
conspicuous, examining: “(1) the location of the notice within the document; (2) the type size used 
within the notice as well as the type size in comparison to the rest of the document; and (3) whether 
the notice is set off in any other way-spacing, font style, all capitals, etc.”). 
 Viewing the allegations in the light most favorable to Schafer, the Court concludes that 
Schafer has plausibly alleged that the contract materials he received did not “clearly and 
conspicuously” identify all variable charges. N.Y. Gen. Bus. Law § 349-d(7). As the image 
located at Paragraph 38 of the amended complaint shows, the variable-rate language “ha[d] all the 
marks of an inconspicuous disclosure: it is buried among other boilerplate terms, is not set out or 
highlighted, and is the same font as the surrounding material.” Schafer I, 481 F. Supp. 3d at 148. 
It is reasonable to infer from the amended complaint that all of the contract materials that Schafer 
received suffered from this same defect: all references to variable charges were “buried without 
highlighting or other emphasis amid [a] . . . sea of confusing fine print.” ECF No. 4 ¶¶ 38, 45. 
That is sufficient to plausibly allege that Direct Energy violated Section 349-d(7). Cf. Direct 
Capital Corp. v. New ABI Inc., 822 N.Y.S.2d 684, 693-94 (N.Y. Sup. Ct. 2006) (warranty 
disclaimer not conspicuous where it was “obscured in the single-spaced, fine print, multiple 

provisions of boilerplate of the agreement”). 
 Direct Energy’s counterarguments are not persuasive. Direct Energy criticizes Schafer for 
having failed to include more robust allegations “about the form, substance, and contents of the 
variable-rate disclosures at issue.” ECF No. 31-1 at 25. It cites Fink v. Time Warner Cable, 714 
F.3d 739 (2d Cir. 2013), for the proposition that a plaintiff bringing a lawsuit centered on the 
language of a disclosure “should not need discovery” to tell him “exactly what that [disclosure] 
said.” Fink, 714 F.3d at 742; see also ECF No. 31-1 at 25. This case is unlike Fink, where the 
plaintiff purported to directly “quote the offending advertisement verbatim” in the complaint, Fink, 
714 F.3d at 741, and thus the plaintiff could not have needed discovery to determine what the 
advertisement said. Id. at 742 (“Plaintiffs brought this lawsuit, and purported to do so based upon 

the specific text of a specific advertisement.”). Schafer’s allegations are asserted “on information 
and belief,” ECF No. 4 ¶¶ 44, 45, and he forthrightly admitted that he could not quote the contract 
materials in all their particulars because, “[a]t the time be brought his claims,” he “no longer 
possessed copies” of them. ECF No. 16 at 8 n.2. “Pleading on the basis of information and belief” 
is “appropriate under [these] circumstances,” Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008), 
since Schafer did not have access to the contract materials, and he has supported that allegation 
with the additional fact that the same “unclear, inconspicuous variable rate language” continues to 
appear in Direct Energy’s more recent contracts. ECF No. 4 ¶ 41; see also Arista Records, LLC 
v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (“The Twombly plausibility standard . . . does not 
prevent a plaintiff from pleading facts alleged ‘upon information and belief’ where the facts are 
peculiarly within the possession and control of the defendant, or where the belief is based on 
factual information that makes the inference of culpability plausible.” (internal quotation marks 
and citation omitted)). 

 Direct Energy next argues that Schafer failed to sufficiently allege causation, insofar as he 
failed to allege that he “saw” the contract materials he received from Direct Energy. ECF No. 31-
1 at 25-26 (“Schafer has failed to properly allege causation as he could not have been injured by 
documents he never saw.” (internal quotation marks omitted)). Contrary to Direct Energy’s 
argument, it can be reasonably inferred from the amended complaint that Schafer saw or reviewed 
the contract materials. Schafer alleges that he was sent the contract materials; that those materials 
failed to clearly and conspicuously disclose that he would be “charged a variable rate”; and that 
he chose to retain Direct Energy as his supplier, rather than procure an alternative supplier, “[a]s 
a result of” Direct Energy’s failure to clearly and conspicuously identify same. ECF No. 4 ¶¶ 44-
47. These allegations reasonably suggest that Schafer saw or reviewed the contract materials—

hence the causal link Schafer draws between Direct Energy’s deficient disclosure and his decision 
to forego an alternative supplier.2 See, e.g., Cummings v. FCA US LLC, 401 F. Supp. 3d 288, 306 
(N.D.N.Y. 2019); O’Neill v. Standard Homeopathic Co., 346 F. Supp. 3d 511, 530-31 (S.D.N.Y. 
2018); Dash v. Seagate Tech. (U.S.) Holdings, Inc., 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014). 

2 Schafer contends that he does not need to even allege that he viewed the contract materials. See ECF No. 
33 at 17-18. Given the Court’s reading of the amended complaint, it need not address this argument. 
II. Rule 12(d) & Rule 56 
 As for Direct Energy’s alternative request, the Court declines to grant summary judgment 
in its favor at this time.3 Schafer responds that he should be given an opportunity to obtain 
discovery. 

 Under Rule 56(d), a court may deny a motion for summary judgment and “allow time . . . 
to take discovery” if the nonmovant “shows by affidavit or declaration that, for specified reasons, 
it cannot present facts essential to justify its opposition.” Fed. R. Civ. P. 56(d)(1)-(2). “Any such 
affidavit or declaration must describe: (1) what facts are sought and how they are to be obtained, 
(2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts 
the affiant has made to obtain them, and (4) why the affiant’s efforts were unsuccessful.” Parker 
v. Fantasia, 425 F. Supp. 3d 171, 184 (S.D.N.Y. 2019) (internal quotation marks omitted). 
 Schafer’s counsel has filed a sufficient affidavit. See ECF No. 33-1. He avers that (a) 
Schafer requires discovery to determine what materials were sent to him and the manner in which 
they were sent; (b) those facts would bear on whether Direct Energy’s disclosures were clear and 

conspicuous under Section 349-d(7); and (c) Schafer has been unable to conduct discovery at this 
early stage of the proceedings. See id. at 3-5. The Court agrees with Schafer’s position. The 
adequacy of Direct Energy’s disclosures depends on the content of the materials it sent to Schafer, 
as well as how the documents were organized. See Schafer I, 481 F. Supp. 3d at 151 (discussing 
whether the disclosure language was “buried in fine print,” as well as whether the pages on which 

3 There is some confusion as to the procedural posture of Direct Energy’s request for summary judgment. 
Direct Energy asks the Court to convert its motion to dismiss to one for summary judgment; once that is 
granted, Direct Energy intends to submit all of the summary judgment materials required under Rule 56 
and the Local Rules. See ECF No. 34 at 14. As Schafer points out, however, the Court had already granted 
Direct Energy leave to file a summary judgment motion “consistent with Rules 12(d) and 56,” and the Court 
directed it to submit “all materials required under the Local Rules.” ECF No. 28 at 2. In any case, regardless 
of the procedural posture, summary judgment is inappropriate at this time. 
the disclosures were made were themselves “buried amongst other documents” (internal quotation 
marks omitted)). Because Schafer did not possess the documents at the time he filed suit, discovery 
is appropriate so as to give him an opportunity to “substantiate his claim[]” that the materials he 
received did not clearly and conspicuously disclose all variable charges. Brooks v. Prack, 77 F. 
Supp. 3d 301, 310-11 (W.D.N.Y. 2014) (collecting cases); see also Hellstrom v. U.S. Dep’t of 
Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (“Only in the rarest of cases may summary 
judgment be granted against a plaintiff who has not been afforded the opportunity to conduct 
discovery.”). 
 Accordingly, the Court declines to grant Direct Energy’s request for summary judgment. 
Direct Energy is free to renew its request, as well as any arguments it raises in connection with the 
present motion, after discovery. Given the Court’s prior legal determinations and the narrow 
factual issues in dispute, see ECF No. 33-1 at 3-4, the fairer and more efficient course is to focus 
on Schafer’s individual claim before delving into broader discovery. Therefore, this case shall 
proceed to discovery concerning Schafer’s individual Section 349-d(7) claim; no discovery may 
be conducted concerning Schafer’s class allegations. 
 CONCLUSION 
 For the reasons stated herein, Direct Energy’s supplemental motion to dismiss (ECF No. 
31) is DENIED. Direct Energy is directed to file an answer by January 10, 2022. The Clerk of 
Court is directed to terminate William Underwood as a plaintiff. 
 IT IS SO ORDERED. 
Dated: December 8, 2021 
 Rochester, New York 

 United States District Judge 
 Western District of New York 

 10